No. 26-1029

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SZ DJI TECHNOLOGY CO., LTD., and DJI SERVICE, LLC,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petition for Review of an Order of
the Federal Communications Commission

## RESPONDENTS' MOTION TO DISMISS

Respondents—the Federal Communications Commission and the United States of America—respectfully move to dismiss the premature petition for review filed by SZ DJI Technology Co. ("DJI"). DJI's petition seeks review of a Public Notice issued by the FCC's Public Safety and Homeland Security Bureau. *See* Public Notice, DA 25-1086, 40 FCC Rcd. --- (Dec. 22, 2025). That Public Notice is not a final Commission order subject to review under 28 U.S.C. § 2342 and 47 U.S.C. § 402(a) for two separate reasons:

First, the Public Notice is not a "final" order subject to judicial review because DJI has sought reconsideration from the agency. *See Stone v. INS*, 514 U.S. 386, 392 (1995) ("a motion to reconsider renders the underlying order nonfinal for purposes of judicial review," so "a party who has sought rehearing cannot seek judicial review until the rehearing has concluded"); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam).

Second, Congress has provided for review only of matters that have been reviewed and decided by the Commission itself, and the Public Notice is staff-level action that has not yet been reviewed by the full Commission. *Int'l Telecard*, 166 F.3d at 387–88; *see* 47 U.S.C. § 155(c)(7) ("an application for review [by the full Commission] shall be a condition precedent to judicial review of any order, decision, report, or action made or taken" by agency staff).

Because DJI seeks review of nonfinal, staff-level action that is not subject to review at this juncture, DJI's petition for review is incurably premature and the Court "must dismiss the petition for lack of jurisdiction." *Sierra Club v. U.S. NRC*, 825 F.2d 1356, 1359 (9th Cir. 1987). Undersigned counsel understands that DJI intends to oppose this motion.

## BACKGROUND

**1.** This matter arises from updates to the FCC's "Covered List" of equipment and services that have been determined to "pose[] an unacceptable risk to the national security of the United States or the security and safety of United States persons." 47 U.S.C. § 1601; *see* 47 C.F.R. § 1.50000–1.50003. Equipment and services on the Covered List are ineligible to receive equipment authorizations from the FCC, 47 C.F.R. § 2.903, or to receive certain federal subsidies administered by the agency, 47 U.S.C. § 1602(a)(1); *see* 47 C.F.R. §§ 1.50004(*i*)(2), 54.9(a).

Congress has established a bifurcated scheme for administering the Covered List. Determinations that communications equipment or services pose an unacceptable risk are made by designated government departments or agencies with national security expertise or by Congress. *See* 47 U.S.C. § 1601(c). Upon receiving a national security determination from an appropriate authority, the FCC must add the designated equipment or services to the Covered List, *id.* § 1601(b)–(c), and publish a list of covered equipment and services on its website, *id.* § 1601(a) & (d)(1). The FCC must also regularly update the list when determinations are updated, changed, or reversed. *Id.* § 1601(d).

**2.** In the National Defense Authorization Act for Fiscal Year 2025 (FY25 NDAA), Congress directed "an appropriate national security agency" to determine by December 23, 2025, whether to designate for inclusion on the Covered List any or all "communications or video surveillance equipment produced by" DJI (or by Autel Robotics). FY25 NDAA § 1709, Pub. L. No. 118-159, 138 Stat. 1773, 2209–11 (to be codified as Note to 47 U.S.C. § 1601).

On December 21, 2025, the FCC received a National Security Determination from an interagency body convened by the White House and possessing appropriate national security expertise under the Covered List statutes. *See* Public Notice App'x B (Dec. 21 Determination). The Determination concluded, among other things, that foreign-produced unmanned aircraft systems (UAS)—commonly known as drones—and UAS critical components "pose an unacceptable risk to the national security of the United States and to the safety and security of U.S. persons" because "UAS and UAS critical components * * * produced in a foreign country could enable persistent surveillance, data exfiltration, and destructive operations over U.S. territory." *Id.* at 2; *see also id.* at 3 (discussing "clear risks that foreign countries could * * * engage in intelligence collection, acts of terrorism, attacks on critical infrastructure

in the U.S. homeland, or massive supply chain disruption," as well as threats to "the resiliency of our UAS industrial base," "risk to our national airspace," and "potential for large-scale attacks during large gatherings").

"[G]iven the nature of legal regimes in certain foreign countries," the Determination expressed concern that "entities subject to the jurisdiction of foreign countries, including those listed in Sec. 1709 of the FY25 NDAA, could leverage their roles as the producer of a UAS or UAS critical component" to harm U.S. national security or U.S. persons. *Id.* at 4. The Determination accordingly "include[d] all communications and video surveillance equipment and services listed in Section 1709(a)(1) of the FY25 National Defense Authorization Act," *id.* at 2, 4, while providing for possible exemptions if "the Department of War or the Department of Homeland Security makes a specific determination to the FCC that a given UAS critical component does not pose" unacceptable risks, *id.* at 2.

**3.** Pursuant to this Determination, on December 22 the FCC's Public Safety and Homeland Security Bureau issued the challenged Public Notice announcing updates to the Covered List. Specifically, agency staff updated the Covered List to include "UAS and UAS critical

components produced in a foreign country and all communications and video surveillance equipment and services listed in Section 1709(a)(1) of the FY25 National Defense Authorization Act." Public Notice at 2–3. The Public Notice observes that the updates were required by 47 U.S.C. § 1601 and Section 1709, and that these statutes "do[] not give the Commission discretion * * * to not make any updates to the Covered List if the statutory conditions are satisfied." *Id.* at 1, 2 & n.9.

4. On January 21, DJI filed a petition for reconsideration with the FCC asking the Public Safety and Homeland Security Bureau to reconsider the Public Notice, or to refer the matter to the full Commission. Petition for Reconsideration, OET Dkt. No. 26-22 (FCC filed Jan. 21, 2026), https://perma.cc/VV7H-6LHP. The Bureau promptly sought public comment on the petition for reconsideration. *See* 91 Fed. Reg. 5245 (Feb. 5, 2026); 91 Fed. Reg. 7222 (Feb. 17, 2026). Oppositions or comments on DJI's petition for reconsideration are due on or before April 6, and reply comments will be due on or before May 11 (a Monday). *See ibid.*; *see also* 47 C.F.R. § 1.4(j) (allowing for "next business day" filings when a filing deadline falls on a holiday). The matter remains pending before the agency.

- 6 -

Meanwhile, on February 20, DJI filed its petition for review in this Court purporting to seek judicial review of the Public Notice. In its Mediation Questionnaire, DJI identifies four issues that it wishes to raise for review. Doc. No. 13.1, at 2. Those issues are essentially the same as the issues raised in DJI's petition for reconsideration before the agency.

## ARGUMENT

DJI's petition for review is incurably premature and must be dismissed for two independent reasons. First, Congress has provided for review only of final Commission orders, but the Public Notice is not final because DJI has petitioned the agency for reconsideration and the underlying administrative proceedings are still ongoing. Second, the Public Notice that DJI seeks to challenge was issued by FCC staff acting on delegated authority, but Congress has provided for review only of matters that have been reviewed and decided by the Commission itself; DJI may not directly seek judicial review of staff-level action. For each of these reasons, DJI's petition for review is "jurisdictional[ly] bar[red]" and the Court "must dismiss the petition for lack of jurisdiction." *Sierra Club v. U.S. NRC*, 825 F.2d 1356, 1359 (9th Cir. 1987); *see also NTCH, Inc. v. FCC*, 877 F.3d 408, 412–13 (D.C. Cir. 2017) (pursuant to the

requirements of 47 U.S.C. § 155(c), the court was "constrained to dismiss [the] petition for review" of staff-level action "for want of jurisdiction").

### A. DJI Impermissibly Seeks Review Of Nonfinal Action That Remains Pending Before The Agency.

Under the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353—commonly known as the Hobbs Act—the Court has jurisdiction to review only "final orders" of the Commission. 28 U.S.C. §§ 2342(1), 2344; *see also* 47 U.S.C. § 402(a). DJI purports to seek review of the December 22 Public Notice, but that Public Notice is not a final order subject to review because DJI has petitioned for agency reconsideration and its petition for reconsideration remains pending.

The Supreme Court has squarely held that, under the Hobbs Act, "a motion to reconsider renders the underlying order nonfinal for purposes of judicial review," so "a party who has sought rehearing cannot seek judicial review until the rehearing has concluded." *Stone*, 514 U.S. at 392 (citing *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)); *accord Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407 (9th Cir. 1996) ("Under this Supreme Court authority, a motion for reconsideration renders an agency action nonfinal" under the APA). "[O]nce a party petitions the agency for reconsideration of an order or any part thereof,

the entire order is rendered nonfinal as to that party," *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489–90 (D.C. Cir. 1994), and any petition for review filed by that party "is incurably premature," *Council Tree Commc'ns v. FCC*, 503 F.3d 284, 287 (3d Cir. 2007).

As a result, "a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order; a petition for judicial review filed during the pendency of a request for agency reconsideration will be dismissed for lack of jurisdiction." *Wade v. FCC*, 986 F.2d 1433, 1433 (D.C. Cir. 1993) (per curiam). As this Court has put it, DJI may not, "without awaiting the [agency's] decision, * * * see[k] from this court a ruling on the identical issues it raised before" the agency. *Sierra Club*, 854 F.2d at 1361–62.

While DJI's Petition for Review incorrectly claims that the Public Notice "is a final order," it also acknowledges that DJI "has moved for reconsideration * * * before the FCC." Pet. 2; *see also* Mediation Questionnaire, Doc. No. 13.1, at 2 (identifying the petition for reconsideration under "proceedings remaining below" and acknowledging that it "remains pending"). The ongoing agency proceedings on DJI's petition for reconsideration render the Public Notice nonfinal as to DJI and preclude it from seeking judicial review in this Court while it is

simultaneously continuing to pursue further administrative review before the agency.

### B. DJI Impermissibly Seeks Review Of Staff-Level Action That Has Not Yet Been Addressed By The Full Commission.

Independently, the Court also lacks jurisdiction because the Public Notice as to which DJI seeks judicial review was issued by agency staff acting on delegated authority; it is not a final order of the Commission itself. When an action is taken by FCC staff, the Communications Act requires that "an application for review [by the full Commission] shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation." 47 U.S.C. § 155(c)(7); *accord* 47 C.F.R. § 1.115(k). And 47 U.S.C. § 402(a) correspondingly provides for judicial review under the Hobbs Act only of "an[] order of the Commission"—meaning an order issued by the FCC's "five commissioners appointed by the President," *id.* § 154(a), not action taken by staff in a subordinate Bureau.

These provisions require a party aggrieved by staff action to first appeal that action to the full Commission and to then "await the Commission's disposition" before it may seek judicial review. *Int'l Telecard*, 166 F.3d at 388. This requirement "prevents a party from

appealing" to a court "directly * * * from a decision made by a delegated authority." *Environmental, LLC v. FCC*, 661 F.3d 80, 84 (D.C. Cir. 2011).

DJI thus cannot pursue direct judicial review of the Bureau-level Public Notice that it seeks to challenge here. Instead, Congress has required that it first seek and obtain a ruling from the full Commission; then, if it is dissatisfied with the Commission's decision, it may petition for review of that Commission order. Until that time, "a petition for review filed after a bureau decision but before resolution by the full Commission" is "incurably premature" and must be dismissed. *Int'l Telecard*, 166 F.3d at 388; *see*, *e.g.*, *NTCH*, 877 F.3d at 409–10 (dismissing for lack of jurisdiction a Bureau-level order not yet reviewed by the full Commission).

## C. Abeyance Is Not An Alternative To Dismissal.

The Court should reject any invitation to place this case in abeyance instead of dismissing it. Abeyance would be inconsistent with the Court's recognition in *Sierra Club* that the Hobbs Act establishes a "jurisdictional bar * * * to petitions filed before a final order has been entered." 825 F.2d at 1359; *see also id.* at 1363 (holding that a "fatally premature" petition "could not confer jurisdiction upon this court"). "[W]hen a petition for review is filed before the challenged action is final

and thus ripe for review," the petition "is incurably premature," and subsequent action "does not ripen the petition for review or secure appellate jurisdiction." *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989) (per curiam); *accord Council Tree*, 503 F.3d at 287. Instead, "the challenging party must file a new notice of appeal or petition for review" after the agency issues a reviewable final order. *TeleSTAR*, 888 F.2d at 134.

## CONCLUSION

The petition for review should be dismissed for lack of jurisdiction.

Dated: March 6, 2026

Respectfully submitted,

/s/ *Scott M. Noveck*

D. Adam Candeub
   *General Counsel*

Jacob M. Lewis
   *Associate General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

Scott M. Noveck
   *Counsel*

FEDERAL COMMUNICATIONS
   COMMISSION

45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

Sharon Swingle
Urja Mittal
   *Attorneys*

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, APPELLATE STAFF
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent*
   *United States of America*

*Counsel for Respondent Federal*
   *Communications Commission*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒   this document contains 2,267 words, *or*

    ☐   this document uses a monospaced typeface and contains ____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒   this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook, *or*

    ☐   this document has been prepared in a monospaced spaced typeface using _____ with _____.


/s/ *Scott M. Noveck*
Scott M. Noveck
*Counsel for Respondents*

- 14 -