**No. 26-1029**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

SZ DJI Technology Co., Ltd., and DJI Service, LLC,

*Petitioners*,

v.

Federal Communications Commission
and United States of America,

*Respondents*.

---

On Petition for Review of an Order of
the Federal Communications Commission

---

## REPLY IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS

---

DJI provides no sound reason why the Court should not swiftly dismiss its incurably premature petition for review. As explained in our motion, this Court's precedent holds that a "fatally premature" petition does "not confer jurisdiction" and that the Court "*must* dismiss the petition for review for lack of jurisdiction." *Sierra Club v. U.S. NRC*, 825 F.2d 1356, 1359, 1363 (9th Cir. 1987) (emphasis added); *see* Mot. 2, 11–12.

Our motion further explained that DJI's petition for review is fatally premature for two independent reasons, both straightforwardly compelled by both statute and judicial precedent. First, DJI impermissibly seeks judicial review of nonfinal action that remains pending before the agency. *See* Mot. 8–10. Second, it impermissibly seeks review of staff-level action that has not yet been addressed by the full Commission. *See* Mot. 10–11. DJI strains to resist these conclusions, but none of its arguments withstand scrutiny.

### A. DJI Impermissibly Seeks Review of Nonfinal Action That Remains Pending Before The Agency.

DJI concedes (Opp. 9) that the Hobbs Act vests the Court with jurisdiction to review only "final orders" of the Commission. 28 U.S.C. §§ 2342(1), 2344. And the Supreme Court and this Court have both squarely held that, under the Hobbs Act, "a motion to reconsider renders the underlying order nonfinal for purposes of judicial review," such that "a party who has sought rehearing cannot seek judicial review until the rehearing has concluded." *Stone v. INS*, 514 U.S. 386, 392 (1995) (citing *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)); *see Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407 (9th Cir. 1996) ("Under this Supreme Court authority, a motion for reconsideration renders an agency

- 2 -

action nonfinal" for purposes of judicial review); *Sierra Club*, 825 F.2d at 1361–62 (a party may not, "without awaiting the [agency's] decision, * * * see[k] from this court a ruling on the identical issues it raised before" the agency).

Notwithstanding this controlling precedent, DJI insists that the challenged Public Notice—as to which it continues to pursue further administrative review in an ongoing agency proceeding—is nonetheless "final" simply because it has "here-and-now consequences" (Opp. 10–11) while the agency deliberates on DJI's filings.

That position is wrong. In *Locomotive Engineers*, for example, unions challenged agency orders that allowed certain trains to operate using non-union crews, "effective 'immediately upon consummation of'" proposed mergers; the Supreme Court held that a motion to reopen "render[ed] the orders under reconsideration nonfinal," even though the order was by then already in effect and trains were running with non-union crews. 482 U.S. at 273–76, 284–85. Likewise, in another case the Supreme Court cited in *Stone* as exemplifying the rule, the D.C. Circuit held that a petition for reconsideration of an agency decision precluded the filing party from seeking review while reconsideration was pending, even after the agency refused to stay the underlying order in

- 3 -

the meantime. *United Transp. Union v. ICC*, 871 F.2d 1114, 1116–18 (D.C. Cir. 1989); *see Stone*, 514 U.S. at 392 (citing *UTU v. ICC*).

More generally, DJI's position that finality is satisfied by present consequences alone is inconsistent with the established test for finality, which requires that two separate conditions be met. "First, the action must mark the consummation of the agency's decisionmaking process— it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation and internal quotation marks omitted). And "second, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Id.* at 178.

As this Court has underscored, "both" prongs of *Bennett*'s test must be satisfied for agency action to be deemed final and reviewable. *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 418 (9th Cir. 2023). Yet DJI's assertion of finality based on nothing more than "here-and-now consequences" focuses exclusively on the second prong, entirely ignoring the first. And that first prong plainly is not satisfied here: The challenged Public Notice is not the consummation of the agency's decisionmaking process, because that process is still ongoing.

To the extent DJI thinks it unfair that the Public Notice remains in effect, that is in no small part a problem of its own making, because DJI never asked the agency to stay the Public Notice while it seeks further review. *Cf.* 47 C.F.R. §§ 1.102(b), 1.106(n) (permitting stays pending review upon showing of good cause). And DJI's complaints that it is suffering ongoing harm while the Public Notice remains in effect are belied by the fact that, even now, it proposes that the Court hold this case in abeyance until (at least) November 2026, with the Public Notice remaining in effect all the while.

Finally, if DJI were correct that present effects automatically give rise to a final order subject to judicial review, that would render staff-level decisions routinely reviewable—even before (or concurrently with) consideration by the full Commission—because staff actions presumptively have full force and effect when issued. *See* 47 U.S.C. § 155(c)(3); 47 C.F.R. § 1.102(b)(1). But as we next explain, the Communications Act instead specifically forecloses judicial review of staff-level action that has not yet been acted on by the full Commission.

**B.  DJI Impermissibly Seeks Review Of Staff-Level Action That Has Not Yet Been Reviewed By The Full Commission.**

DJI likewise fails to overcome our showing that its petition for review is barred for the additional reason that the Communications Act bars judicial review of staff-level action that has not yet been reviewed by the full Commission.  *See* Mot. 10–11.  Under Section 5(c)(7) of the Act, when action is taken by FCC staff acting under delegated authority, "[t]he filing of an application for review [by the full Commission] shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation."  47 U.S.C. § 155(c)(7). And since "[o]ngoing agency review renders an order nonfinal for purposes of judicial review," it follows that "a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature."  *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam); *see also id.* at 387–88 (Section 5(c)(7) requires that a party aggrieved by staff action must "await the Commission's disposition" before it may seek judicial review).

In response, DJI contends (Opp. 13–14 & n.1) that Section 5(c)(7) entitles it to merely "fil[e]" an application for review and then proceed immediately to court, without allowing the agency to consider or act on

- 6 -

the application. In DJI's view, Section 5(c)(7) amounts to little more than a perfunctory box-checking exercise.

Even if DJI's hyperliteral reading of Section 5(c)(7) were correct, that would not save its petition here because DJI has not even checked that box. Under applicable FCC rules, a party aggrieved by a Bureau decision may file *either* a petition for reconsideration by the Bureau or an application for review by the full Commission, but not both. 47 C.F.R. § 1.104(b). DJI elected to first seek reconsideration by the Bureau, rather than directly file an application for review by the Commission. So even on DJI's own reading, it has not complied with Section 5(c)(7)'s mandatory prerequisite to judicial review.*

In any event, DJI's attempt to reduce Section 5(c)(7) to a hollow ritual is wrong. The D.C. Circuit, which has historically been the principal forum for Hobbs Act challenges to FCC orders, has squarely rejected identical arguments "that the act of filing an application for

---

\* DJI wrongly claims (Opp. 13) that it complied with the statute because its petition for reconsideration suggested that it could be "appropriate" for the Bureau to refer the matter to the full Commission. Pet. for Recon. at 2 n.2, 6–7. Given the choice to file either a petition for reconsideration or an application for review—"but not both," 47 C.F.R. § 1.104(b)—DJI cannot have it both ways by filing a petition for reconsideration but asking the Court to treat it as an application for review.

Commission review satisfies the statutory prerequisite to judicial review, and that petitioners need not await the Commission's decision on review before petitioning th[e] court." *Int'l Telecard Ass'n*, 166 F.3d at 387–88.[†] Allowing "a petition for review filed after a bureau decision but before resolution by the full Commission" would contravene the principle that "[o]ngoing agency review renders an order nonfinal for purposes of judicial review" such that "a petition for review of the order is incurably premature." *Id.* at 388; *accord Ga. Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1050–51 (11th Cir. 2003). And requiring parties to await decision on their applications for review comports with the "rule prevent[ing] a party from appealing directly to this Court from a decision made by a delegated authority." *Environmentel, LLC v. FCC*, 661 F.3d 80, 84 (D.C. Cir. 2011).

DJI attempts (Opp. 14 n.1) to downplay *International Telecard* as "one * * * out-of-circuit precedent." That effort to wave away well-reasoned authority from a sister circuit overlooks that the Eleventh Circuit has reached the same conclusion. Section 5(c)(7) requires not only

---

[†] *See, e.g., Broadband Commc'ns Ass'n of Pa. v. FCC*, 2026 WL 1179476 (D.C. Cir. 2026) (per curiam); *Indian Peak Props. LLC v. FCC*, 2023 WL 8494465 (D.C. Cir. 2023) (per curiam); *NextWave Pers. Commc'ns Inc. v. FCC*, 2000 WL 1093322 (D.C. Cir. 2000) (per curiam).

that a party take the ministerial act of "filing" an application for review, the Eleventh Circuit has explained, but also that it "must give the Commission an opportunity to issue a final decision; otherwise, the statutory prerequisite would be rendered useless." *Ala. Power v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002). Tellingly, DJI fails to identify even a single case from any circuit permitting judicial review of a staff-level decision that has not yet been reviewed by the full Commission.

Contrary to DJI's insinuation that "the FCC could permanently evade judicial review by declining to act on the applications" (Opp. 14), a party that believes the agency has failed to act within a reasonable time is "not without recourse," because "[i]n an appropriate case, [the Court] may issue a mandate pursuant to the All Writs Act." *Confederated Tribes of Umatilla Indian Reserv. v. Bonneville Power Admin.*, 342 F.3d 924, 930 (9th Cir. 2003). "Issuing a writ of mandamus directing a federal agency to act * * * is 'an extraordinary remedy justified only in exceptional circumstances,'" but may be "warranted in those rare instances when the agency's delay is 'egregious.'" *Pesticide Action Network N. Am. v. U.S. EPA*, 798 F.3d 809, 813 (9th Cir. 2015).

Indeed, this Court has adopted "guidelines for determining whether an agency's delay in issuing a final order is so 'egregious' as to warrant

mandamus." *Cal. Power Exch. Corp. v. FERC*, 245 F.3d 1110, 1124 (9th Cir. 2001). But DJI offers no reason to think such action will be necessary, especially since the FCC moved swiftly to seek public comment on its petition for reconsideration. *Cf. id.* at 1125 ("The cases in which courts have afforded relief have involved delays of years, not months."). If the agency fails to act on that petition within a reasonable period, DJI may seek judicial relief at that time—but only through the proper vehicle of a petition for mandamus under the All Writs Act, rather than this improper petition for review under the Hobbs Act, and only upon the "truly extraordinary" showing required to "justify [the Court's] interference with nonfinal agency action." *Confederated Tribes*, 342 F.2d at 930 (quoting *Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 630 (9th Cir. 1985)).

## C.     Abeyance Is Not An Alternative To Dismissal.

DJI identifies no principled basis for its plea (Opp. 23–25) to keep this case on the Court's docket without action rather than dismiss it. This Court's decision in *Sierra Club* straightforwardly requires that a fatally premature petition be dismissed for lack of jurisdiction. 825 F.2d at 1359, 1363. To sidestep that mandate, the D.C. Circuit has explained, would be "a pointless waste of judicial energy." *TeleSTAR, Inc. v. FCC*,

888 F.2d 132, 134 (D.C. Cir. 1989) (per curiam); *accord Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1490 (D.C. Cir. 1994) ("The alternative presents too great a risk of wasting judicial resources without creating any significant benefit.").

There is no foundation for DJI's professed concern (Opp. 16–17) that it had to seek review of the Bureaus' Public Notice "to ensure no time bar" will later "prevent this Court from reaching the merits." The Communications Act requires the Commission to rule on all applications for review of staff-level action. 47 U.S.C. § 155(c)(4). The resulting Commission ruling is a final order that "[a]ny party aggrieved" may challenge "within 60 days after its entry," allowing the court to review the merits at that time. 28 U.S.C. § 2344. Courts regularly review the merits of Commission orders where there was no petition for review of antecedent staff-level action—especially since such staff actions are unreviewable under Section 5(c)(7). And even if the 60-day review period ran from the original staff action, the Supreme Court has held that a timely request for further administrative review "stay[s] the running of the Hobbs Act's limitation period until [it] ha[s] been acted upon by the Commission," *Locomotive Eng'rs*, 482 U.S. at 284, again ensuring that an aggrieved party would be able to seek review of the merits at that time.

In urging the Court to keep this case on its docket, DJI seeks (Opp. 24) to enlist the Court in an effort to superintend an ongoing, normal-course agency proceeding. That effort is manifestly improper. *See Pub. Util. Comm'r*, 767 F.2d at 630 ("[T]his court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts."); *cf. FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 141–42 (1940). Congress has not empowered the courts to intervene in ongoing Commission proceedings through petitions for review, and any request for the Court to do so must instead come through the careful strictures of mandamus.

*       *       *

For the foregoing reasons, and those stated in our motion to dismiss, DJI's petition for review is incurably premature and must be dismissed for lack of jurisdiction.

Dated:  May 4, 2026

Respectfully submitted,

/s/  *Scott M. Noveck*

D. Adam Candeub
   *General Counsel*

Jacob M. Lewis
   *Associate General Counsel*

Sarah E. Citrin
   *Deputy Associate General Counsel*

Scott M. Noveck
   *Counsel*

Sharon Swingle
Urja Mittal
   *Attorneys*

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, APPELLATE STAFF
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent*
   *United States of America*

FEDERAL COMMUNICATIONS
   COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal*
   *Communications Commission*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>2,396</u> words, *or*

    ☐ this document uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word for Office 365</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

/s/ *Scott M. Noveck*
Scott M. Noveck
*Counsel for Respondents*

- 14 -