**RELIEF REQUESTED AS SOON AS POSSIBLE AFTER NOVEMBER 2, 2026**

**No. 26-1029**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

SZ DJI TECHNOLOGY CO., LTD., and DJI SERVICE, LLC,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES OF AMERICA,
*Respondents*.

---

On Petition for Review of an Order of the Federal Communications Commission

---

# RESPONDENTS' RENEWED MOTION TO DISMISS

---

Respondents—the Federal Communications Commission and the United States of America—respectfully renew their motion to dismiss the premature petition for review filed by SZ DJI Technology Co. (DJI). DJI's petition seeks review of a Public Notice issued by the FCC's Public Safety and Homeland Security Bureau. *See* Public Notice, DA 25-1086 (Dec. 22, 2025). As explained in Respondents' initial motion (Dkt. 17.1), that staff-level Public Notice is not a final Commission order subject to review under 28 U.S.C. § 2342 and 47 U.S.C. § 402(a), and DJI may not obtain

judicial review while still petitioning for further administrative review. The Supreme Court recently reaffirmed this longstanding principle. *See Nat'l Republican Congressional Comm. v. Brown*, No. 26A274, 2026 WL 2618462, at *1 (U.S. Sept. 4, 2026) (per curiam) (*NRCC*); *accord Stone v. INS*, 514 U.S. 386, 392 (1995).

In light of *NRCC*, Respondents again respectfully request that this case be dismissed. Under the current briefing schedule, DJI's opening merits brief is due November 2, 2026, and Respondents' answering brief December 2. To avoid further unnecessary expenditure of resources for the parties and this Court, we request a decision on this motion as soon as possible after November 2.[1]

## BACKGROUND

**1.** This matter arises from updates to the FCC's "Covered List" of equipment and services that have been determined to "pose[] an unacceptable risk to the national security of the United States or the security and safety of United States persons." 47 U.S.C. § 1601; *see* 47 C.F.R. §§ 1.50000–1.50003. Equipment and services on the Covered List

[1] DJI opposes this motion and has advised undersigned counsel that it will move for an extension of the time to respond through November 2 Respondents do not oppose that request.

are ineligible to receive equipment authorizations from the FCC, 47 C.F.R. § 2.903, or to receive certain federal subsidies, 47 U.S.C. § 1602(a)(1); *see* 47 C.F.R. §§ 1.50004(*i*)(2), 54.9(a).

Congress has established a bifurcated scheme for administering the Covered List. Determinations that communications equipment or services pose an unacceptable risk are made by designated government departments or agencies with national security expertise or by Congress. *See* 47 U.S.C. § 1601(c). Upon receiving a national security determination from an appropriate authority, the FCC must add the designated equipment or services to the Covered List, *id.* § 1601(b)–(c), and publish a list of covered equipment and services on its website, *id.* § 1601(a) & (d)(1). The FCC must also regularly update the list. *Id.* § 1601(d).

**2.** In the National Defense Authorization Act for Fiscal Year 2025 (FY25 NDAA), Congress directed "an appropriate national security agency" to determine by December 23, 2025, whether to designate for inclusion on the Covered List any or all "communications or video surveillance equipment produced by" DJI (or by Autel Robotics). FY25 NDAA § 1709, Pub. L. No. 118-159, 138 Stat. 1773, 2209–11 (to be codified as Note to 47 U.S.C. § 1601).

On December 21, 2025, the FCC received a National Security Determination from an interagency body convened by the White House and possessing appropriate national security expertise under the Covered List statutes. *See* Public Notice App'x B (Determination). The Determination concluded, among other things, that foreign-produced unmanned aircraft systems (UAS)—commonly known as drones—and UAS critical components "pose an unacceptable risk to the national security of the United States and to the safety and security of U.S. persons" because "UAS and UAS critical components * * * produced in a foreign country could enable persistent surveillance, data exfiltration, and destructive operations over U.S. territory." *Id.* at 2.

"[G]iven the nature of legal regimes in certain foreign countries," the Determination expressed concern that "entities subject to the jurisdiction of foreign countries, including those listed in [Section] 1709 of the FY25 NDAA, could leverage their roles as the producer of a UAS or UAS critical component" to harm U.S. national security or U.S. persons. *Id.* at 4. The Determination accordingly "include[d] all communications and video surveillance equipment and services listed in Section 1709(a)(1) of the FY25 National Defense Authorization Act," *id.* at 2, 4, while providing for possible exemptions if "the Department of War

or the Department of Homeland Security makes a specific determination to the FCC that a given UAS critical component does not pose" unacceptable risks, *id.* at 2.

**3.** Pursuant to this Determination, on December 22 the FCC's Public Safety and Homeland Security Bureau issued a Public Notice announcing updates to the Covered List. Specifically, agency staff updated the Covered List to include "UAS and UAS critical components produced in a foreign country and all communications and video surveillance equipment and services listed in Section 1709(a)(1) of the FY25 National Defense Authorization Act." Public Notice at 2–3. The Public Notice observes that the updates were required by 47 U.S.C. § 1601 and Section 1709 of the FY25 NDAA. *See id.* at 1, 2 & n.9.

**4.** On January 21, DJI filed a petition for reconsideration with the FCC asking the Public Safety and Homeland Security Bureau to reconsider the Public Notice, or to refer the matter to the full Commission. Petition for Reconsideration, OET Dkt. No. 26-22 (FCC filed Jan. 21, 2026), https://perma.cc/VV7H-6LHP. The Bureau promptly sought public comment on the petition for reconsideration. *See* 91 Fed. Reg. 5245 (Feb. 5, 2026); *see also* 91 Fed. Reg. 7222 (Feb. 17, 2026) (correction notice). In response, the FCC received four oppositions, a

reply to those oppositions from DJI, and over 1800 other submissions from members of the public. *See generally* OET Dkt. No. 26-22, *available at* https://www.fcc.gov/ecfs/search/search-filings.

In addition, on May 19, DJI made an *ex parte* presentation to FCC staff "to discuss a report on two of DJI's drone systems and their controllers and applications (DJI Security Assessment) and argue that their equipment should not be on the Covered List." *See* Public Notice, DA 26-592, at 1 (June 16, 2026) (June 16 Public Notice), https://perma.cc/FU63-QXQ7. "The Commission's rules require that in permit-but-disclose proceedings [like the DJI proceeding] 'all written *ex parte* presentations and all summaries of oral *ex parte* presentations . . . be filed" in the public docket. *Ibid.* Accordingly, "on June 9"—at the request of Commission staff, after first overlooking that obligation—"DJI filed a notice of an *ex parte* presentation and a copy of the DJI Security Assessment." *Ibid.*

To allow parties "sufficient time to comment on the DJI Security Assessment," the Commission re-opened the comment window and allowed "for public comment on DJI's filing by August 28." *Id.* at 2 (emphasis omitted). It received more than 150 additional comments, *see generally* OET Dkt. No. 26-22, *available at*

https://www.fcc.gov/ecfs/search/search-filings, including a further lengthy submission from DJI, *see* Comments of SZ DJI Tech. Co., OET Dkt. No. 26-22, at 1–22 (filed Aug. 28, 2026) (discussing the DJI Security Assessment).

In addition, on October 14, the agency entered into the record a report from the U.S. Department of War. *See* Public Notice, DA 26-1106 (Oct. 14, 2026), https://perma.cc/2X82-A2UY. The same day, the Commission received a letter "object[ing] to the arguments outlined in" DJI's petition for reconsideration from U.S. Senator Rick Scott, a member of the Armed Services Committee. *See* Letter to FCC Chairman Brendan Carr from U.S. Sen. Rick Scott (Oct. 14, 2026), https://perma.cc/CW8L-VY8Z. The Commission is now actively analyzing this record.

**5.** On February 20, while still pursuing relief from the FCC through its petition for reconsideration, DJI filed a petition for review of the Public Notice in this Court. We anticipate that DJI will raise essentially the same issues in this case as in its petition for agency reconsideration. *See generally* Mediation Questionnaire (Dkt. 13.1).

**6.** On March 6, Respondents moved to dismiss DJI's petition for review. *See generally* Mot. to Dismiss (Dkt. 17.1). Citing binding precedent including *Stone v. INS*, Respondents argued (among other

things) that under the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353 (commonly known as the "Hobbs Act"), "a party who has sought rehearing [before an agency] cannot seek judicial review until the rehearing has concluded." 514 U.S. at 392 (cited in Mot. to Dismiss at 8).

On April 15, DJI opposed the motion to dismiss. DJI argued that, rather than "consider the jurisdictional issues now," the Court "should instead hold this case in abeyance for six months" to allow the ongoing reconsideration proceeding to proceed. Opp. (Dkt. 21.1) at 2. Respondents replied to DJI's opposition on May 4. *See generally* Reply (Dkt. 24.1).

On May 28, this Court denied the motion to dismiss "without prejudice to renewing the arguments in the answering brief." Order (Dkt. 25.1) at 1. The Court granted DJI's request to place the case in abeyance until November 2026, and set a briefing schedule under which DJI's opening brief "is due November 2," the answering brief December 2, and the optional reply brief 21 days later. *Id.*

**7.** On September 17, the Commission submitted a letter advising this Court of the Supreme Court's decision in *NRCC*. *See* Letter (Dkt. 26.1) at 1. There, with only Justice Jackson dissenting, the Court recalled and granted a stay of the Fourth Circuit's mandate in *Brown v.*

*FCC*, --- F.4th ---, 2026 WL 2493115 (4th Cir. Aug. 25, 2026). *See NRCC*, 2026 WL 2618462, at *2. In *Brown*, a divided panel of the Fourth Circuit—over the dissent of Judge Wilkinson—had asserted jurisdiction to review a public notice issued by the FCC's Media Bureau while the petitioners' application for review by the full Commission remained pending. 2026 WL 2493115, at *1–3. In staying the Fourth Circuit's mandate, the Supreme Court explained: "[T]he Communications Act makes clear that an aggrieved party must wait for the Commission to resolve its application for review by order before filing a petition for judicial review." *NRCC*, 2026 WL 2618462, at *1.

**8.** Following the Supreme Court's decision in *NRCC*, the petitioners in *Brown* filed a new petition in the Fourth Circuit under the All Writs Act, 28 U.S.C. § 1651, now arguing that Commission action on their application for review had been unreasonably delayed. *See generally* Petition for Writ of Mandamus, *In re: Brown*, No. 26-2230, Doc. 2-1 (4th Cir. filed Sept. 8, 2026). On October 7, the same divided panel that had sided with the petitioners in their earlier case now granted the writ of mandamus. *See generally In re: Brown*, No. 26-2230, 2026 WL 3017599 (4th Cir. Oct. 7, 2026). On October 14, the Supreme Court (with Justices Sotomayor and Jackson dissenting) granted the

FCC's application to stay the Fourth Circuit's mandamus order. *FCC v. Brown*, No. 26A476, 2026 WL 3080098 (per curiam) (U.S. Oct. 14, 2026) (*Brown II*). In doing so, the Court reaffirmed that "[t]he Communications Act requires the Commission to act on every application [for review] it receives, but it does not obligate the Commission to act within a particular timeframe." *Ibid.*

**ARGUMENT**

*NRCC* reconfirms that a party may not seek judicial review of an FCC order as to which the same party has a still-pending request for agency review. DJI's various arguments in support of this Court's jurisdiction—groundless from the start, *see generally* Reply (Dkt. 24.1)—can have no possible merit after *NRCC*. And as the proceedings before the Fourth Circuit leading up to *NRCC* illustrate, for this Court to require the parties to submit merits briefing without first addressing Respondents' jurisdictional objections would entail a significant, wasteful expenditure of resources from the parties and this Court—and potentially even from the Supreme Court. On the record here, there should be no concern about undue agency delay. But even if there were, Congress has not empowered the courts to intervene in ongoing Commission proceedings by means of a petition for review of a non-final

agency order. Any request for judicial relief must come through the careful strictures of mandamus under the All Writs Act, 28 U.S.C. § 1651—an extraordinary remedy that DJI does not seek and could not justify here.

### A. DJI Impermissibly Seeks Review Of Nonfinal Action That Remains Pending Before The Agency.

Under the Hobbs Act, this Court has jurisdiction to review only "final orders" of the Commission. 28 U.S.C. §§ 2342(1), 2344; *see also* 47 U.S.C. § 402(a). The Public Notice is not a final order subject to review, because DJI has petitioned for agency reconsideration and its petition for reconsideration remains pending.

The Supreme Court has squarely held that, under the Hobbs Act, "a motion to reconsider renders the underlying order nonfinal for purposes of judicial review," so "a party who has sought rehearing cannot seek judicial review until the rehearing has concluded." *Stone*, 514 U.S. at 392 (citing *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)); *accord Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407 (9th Cir. 1996) ("Under this Supreme Court authority, a motion for reconsideration renders an agency action nonfinal" under the Administrative Procedure Act). "[O]nce a party petitions the agency for reconsideration of an order

or any part thereof, the entire order is rendered nonfinal as to that party," *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489–90 (D.C. Cir. 1994), and any petition for review filed by that party "is incurably premature," *Council Tree Commc'ns v. FCC*, 503 F.3d 284, 287 (3d Cir. 2007).

As a result, "a party may not simultaneously seek both agency reconsideration and judicial review of an agency's order; a petition for judicial review filed during the pendency of a request for agency reconsideration will be dismissed for lack of jurisdiction." *Wade v. FCC*, 986 F.2d 1433, 1433 (D.C. Cir. 1993) (per curiam). As this Court has put it, DJI may not, "without awaiting the [agency's] decision, * * * see[k] from this court a ruling on the identical issues it raised before" the agency. *Sierra Club v. U.S. NRC*, 825 F.2d 1356, 1356–62 (9th Cir. 1987).

In a closely analogous procedural posture, the Supreme Court just last month reaffirmed this same principle in *NRCC*. There, the FCC's Media Bureau had issued a public notice concerning the application of the agency's "lowest unit charge" requirements for certain political advertisements during an election season. *See NRCC*, 2026 WL 2618462, at *1. Four Democratic candidates for Congress filed an application for review of that public notice by the full Commission, asking the Commission "to set aside the public notice as unlawful." *Id.* Not content

to await the full Commission's decision, however, the Democratic candidates two months later sought judicial review of the public notice in the Fourth Circuit. *See generally Brown v. FCC*, No. 26-1785, 2026 WL 2493115 (4th Cir. Aug. 25, 2026), *mandate recalled and stayed by NRCC*, 2026 WL 2618462.

The FCC promptly moved to dismiss the petition for judicial review for lack of jurisdiction. Motion to Dismiss, *Brown v. FCC*, No. 26-1785 (Doc. 17) (4th Cir. filed July 1, 2026). Without initially deciding the Commission's motion, the Fourth Circuit granted the petitioners' request for expedited merits briefing and oral argument. *See Brown*, 2026 WL 2493115, at *3. The court's decision to proceed with merits briefing put the agency's lawyers to the task of defending the merits of the Media Bureau's order without "allow[ing] the Commission to have the first say." *Ibid.*

After expedited briefing and oral argument, the panel majority asserted jurisdiction to decide the case. *See id.* at *4. Judge Wilkinson dissented, characterizing the court's decision as "transgress[ing] its jurisdictional bounds," where jurisdiction under the Hobbs Act is "limited to 'final orders' of the [agency]." *Id.* at *16 (Wilkinson, J., dissenting). Because the same petitioners were "mak[ing] the same arguments and

seek[ing] the same relief" in their application for review before the Commission, Judge Wilkinson would have held that "[w]hile the Commission [was] review[ing] the application, the Public Notice before [the court was] not a final order." *Ibid.* In his view, the court was not empowered to "sit in judgment of the Commission [before] the Commissioners [could] complete their statutory duty to 'pass[ ] upon' the application and decide whether to adopt the Public Notice." *Ibid.* (third alteration in original; quoting 47 U.S.C. § 155(c)(4)).

The agency's supporting intervenors applied for an emergency stay, which the Supreme Court (with only Justice Jackson dissenting) granted. The Court explained that, under the Communications Act, "an aggrieved party must wait for the Commission to resolve its application for review by order before filing a petition for judicial review." *NRCC*, 2026 WL 2618462, at *1. And under the Hobbs Act, the time to petition for review begins to run upon public notice of the Commission's final order resolving the application for review. *Ibid.* (citing 28 U.S.C. § 2344). The Court concluded that "[b]ecause the candidates' application for review was pending when they filed their petition for review, the Fourth Circuit likely lacked statutory jurisdiction to address their challenge." *Id.* at *2. The Fourth Circuit's contrary holding, the Court explained, "split[] with

every other Circuit to have considered the issue." *Ibid.* (citing *Council Tree*, 503 F.3d at 287; *Alabama Power Co. v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam)). The Court emphasized all of these same points when it stayed the Fourth Circuit's order of mandamus in the follow-on litigation to *NRCC*. *See Brown II*, 2026 WL 30080098 (slip op. at 2).

In light of the Supreme Court's recent decisions in *NRCC* and the subsequent mandamus case—on top of *Stone*—there can now be no possible doubt that this Court lacks jurisdiction to review the staff-level Public Notice here. DJI has recognized (Opp. (Dkt. 21.1) at 9) that the Hobbs Act vests this Court with jurisdiction to review only "final orders" of the Commission. DJI also acknowledges (*id.* at 7) that it has "petitioned the FCC for reconsideration of the Bureau's decision adding DJI's products to the Covered List." That petition has generated a substantial record in response, which the Commission is in the process of analyzing. DJI's petition for reconsideration accordingly remains pending, and the Public Notice is not "the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). For this Court to consider the merits of the Public Safety and Homeland Security Bureau's order while DJI's petition for reconsideration remains

pending would contravene both *Stone* and this Court's decision in *Sierra Club*, as well as "split[] with every other Circuit to have considered the issue" in the context of applications for review of staff-level FCC decisions. *NRCC*, 2026 WL 2618462, at *2; *accord Brown II*, 2026 WL 30080098 (slip op. at 2).

### B. DJI's Contrary Arguments Are Unavailing.

In opposing Respondents' initial motion to dismiss, DJI entirely ignored *Stone*. Instead of addressing that binding precedent, DJI offered four arguments for why the Court should treat the Public Notice as "final": (1) that it has "the force and effect of law" pending review by the full Commission (Opp. (Dkt. 21.1) at 11); (2) that the Public Notice was taken by the Public Safety and Homeland Security Bureau "on the Commission's behalf under its delegated authority" (*id.* at 12); (3) that 47 U.S.C. § 155(c)(7) makes only "[t]he filing of an application for review," not a decision on such an application, a "condition precedent" to judicial review (*id.* at 13–14); and (4) that DJI's petition is not "incurably premature" because "a possible reading of the [Communications Act] would require a party to file a petition for review in court within 60 days of the FCC's decision, even if the party also seeks reconsideration of that decision by the Commission" (*id.* at 16). These arguments were meritless

when DJI first made them, and the Supreme Court's decision in *NRCC* has now confirmed as much.

1. *"Finality" does not turn on effectiveness.* A party may request a stay of a staff-level FCC order pending a decision on a petition for reconsideration or application for review. *See* 47 C.F.R. § 1.102(b). Where, as here, a party does not seek a stay, staff-level orders take effect before the Commission decides a petition for reconsideration or application for review. *See* 47 U.S.C. § 155(c)(3); 47 C.F.R. § 1.102(b)(1).

The Supreme Court has repeatedly recognized that an order may have "here-and-now consequences" (Opp. (Dkt. 21.1) at 10–11) and yet not be "final" for purposes of judicial review. In *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 274 (1987), for example, unions challenged agency orders that allowed certain trains to operate using non-union crews, "effective 'immediately upon consummation of'" proposed mergers. The Supreme Court held that a motion to reopen "render[ed] the orders under reconsideration nonfinal," *id.* at 285, even though the order was by then already in effect and trains were running with non-union crews, *see id.* at 273–76, 284–85. In another case cited by the Supreme Court in *Stone* as exemplifying this rule, the D.C. Circuit held that a petition for reconsideration of an agency decision precluded

the filing party from seeking review while reconsideration was pending, even after the agency refused to stay the underlying order in the meantime. *United Transp. Union v. ICC*, 871 F.2d 1114, 1116–18 (D.C. Cir. 1989); *see Stone*, 514 U.S. at 392. And most recently, the Supreme Court held in *NRCC* (and reaffirmed in *Brown*) that the Fourth Circuit "likely lacked statutory jurisdiction to address [the *Brown* petitioners'] challenge" to a staff-level FCC order that was then in effect. 2026 WL 2618462, at *2. In doing so, it necessarily (if provisionally) rejected the Fourth Circuit's reliance on the theory that the Media Bureau's order in that case constituted "a legislative rule" that imposed legally binding obligations. *Brown*, 2026 WL 2493115, at *6.

More generally, DJI's position that finality is satisfied by present consequences alone is inconsistent with the established test for finality, which requires that two separate conditions be met. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177–78 (citation and internal quotation marks omitted). And "second, the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Id.* at 178.

As this Court has underscored, "both" prongs of *Bennett*'s test must be satisfied for agency action to be deemed final and reviewable. *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 418 (9th Cir. 2023). Yet DJI's assertion of finality based on nothing more than "here-and-now consequences" focuses exclusively on the second prong, entirely ignoring the first. And that first prong plainly is not satisfied here: The challenged Public Notice is not the consummation of the agency's decisionmaking process, because that process is still ongoing.

2. *Action on delegated authority is not final.* Contrary to DJI's contention (Opp. (Dkt. 21.1) at 12), the fact that the Public Safety and Homeland Security Bureau issued the Public Notice on authority delegated by the Commission does not mean it reflects the consummation of the agency's decisionmaking process. The Communications Act makes "[t]he filing of an application for review" of staff-level action taken on delegated authority "a condition precedent to judicial review," 47 U.S.C. § 155(c)(7); *accord* 47 C.F.R. § 1.115(k), and the filing of such an application continues the agency's decisionmaking process. Accordingly, "a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature."

*Int'l Telecard*, 166 F.3d at 388. DJI's attempt to dismiss *International Telecard* as nonbinding "out-of-circuit precedent" (Opp. at 14 n.1) is unavailing after *NRCC* and *Brown II*. *See, e.g.*, *NRCC*, 2026 WL 2618462, at *2 (citing *International Telecard* with approval, along with *Council Tree*, 503 F.3d at 287, and *Alabama Power*, 311 F.3d at 1366).

3. *Finality requires more than the "filing" of an application for review.* DJI alternatively argues that only "[t]he filing of an application for review"—not a decision on that application—is a precondition to judicial review. Opp. (Dkt. 21.1) at 13 (alteration in original; quoting 47 U.S.C. § 155(c)(7)). Again, *NRCC* forecloses this argument. As the Supreme Court recognized, not only does Section 155(c)(7) of the Communications Act require that a party apply for review from the full Commission before seeking judicial review of a staff-level order, but "[t]he Commission is required to resolve every application it receives." *NRCC*, 2026 WL 2618462, at *1 (citing 47 U.S.C. § 155(c)(4)). "The Communications Act thus contemplates that an aggrieved party will file an application for review with the Commission, that the Commission will resolve that application by order, and that public notice of that order will

issue before an aggrieved party may petition for further review in federal court." *Ibid.*

4. *No "protective" petition is needed.* That same passage from *NRCC* also defeats DJI's remaining argument, that its premature petition is needed to "protect its rights" because "a possible reading of the [Communications Act] would require a party to file a petition for review in court within 60 days of the FCC's decision, even if the party also seeks reconsideration of that decision by the Commission." Opp. (Dkt. 21.1) at 16. When the Supreme Court in *NRCC* held "that public notice of [the Commission's] order [resolving an application for review] will issue before an aggrieved party may petition for further review in federal court," it cited 28 U.S.C. § 2344. *NRCC*, 2026 WL 2618462, at *1. That provision of the Hobbs Act states:

> On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

28 U.S.C. § 2344. The time for seeking judicial review thus begins with "entry" of "the final order" of the full Commission on a party's application.

Moreover, even if the 60-day review period could somehow be construed to run from the time that the FCC's subordinate bureau issued its non-final order, *see* Opp. (Dkt. 21.1) at 16–17, the Supreme Court has held that a timely request for further administrative review "stay[s] the running of the Hobbs Act's limitation period until [it] ha[s] been acted upon by the Commission," *Locomotive Eng'rs*, 482 U.S. at 284. There thus can be no plausible concern that DJI will be unable to challenge the Commission's final order after review of the record now compiled in response to DJI's petition for reconsideration is completed.

### C. This Court Should Not Require Merits Briefing Before The Commission Has Addressed DJI's Petition For Reconsideration.

In denying Respondents' initial motion to dismiss "without prejudice," the motions panel offered no reason for requiring merits briefing to go forward without addressing the government's jurisdictional objections. Order (Dkt. 25.1) at 1. The *Brown* litigation in the Fourth Circuit—which generated the Supreme Court's stay order in *NRCC*—illustrates why that approach would waste resources for the parties, this Court, and possibly the Supreme Court as well.

The Fourth Circuit in *Brown* ordered expedited merits briefing without first addressing the government's jurisdictional objections. *See*

*supra* p. 13. The parties fully briefed the case, and the agency's lawyers were forced under the circumstances to offer a defense of the order on the merits before the Commission could address the underlying issues. When a divided panel of the Fourth Circuit decided the case in favor of the petitioners, intervenors supporting the respondents, with the respondents' support, obtained a stay from the Supreme Court. *See NRCC*, 2026 WL 2618462, at *2. Only then, after the Supreme Court held that the Fourth Circuit "likely lacked statutory jurisdiction" to proceed with the merits of that case, *ibid.*, did the petitioners invoke the All Writs Act—an avenue of relief that had been available to them all along—to seek a writ of mandamus to compel action on their application for review. And by the time the Supreme Court ultimately determined that mandamus was unwarranted, parties and amici in the course of the two *Brown* cases had filed more than 20 substantive briefs and motions (including 6 substantive filings by the government), the Fourth Circuit had conducted oral argument and issued 3 substantive decisions and orders in the case, and the Supreme Court had issued 4 interceding orders.

This Court should not invite a potential similar expenditure of resources where the Court's lack of jurisdiction is clear. Requiring

Respondents' counsel to defend the merits of the Public Notice while the Commission is still considering DJI's petition for reconsideration, and analyzing the voluminous record generated in response, is unwarranted when Congress has made clear that the agency should have the opportunity to speak first on the underlying issues. *See* 47 U.S.C. § 155(c)(4), (7).

DJI insinuates that "the FCC could permanently evade judicial review by declining to act on * * * applications" for Commission review (Opp. (Dkt. 21.1) at 14), but that is wrong. The Commission is statutorily obligated "to act on applications for review." *E.g.*, *NRCC*, 2026 WL 2618462, at * 1 (citing 47 U.S.C. § 155(c)(4)). And a party that believes the agency has failed to act within a reasonable time is "not without recourse"; "[i]n an appropriate case, [a court] may issue a mandate pursuant to the All Writs Act." *Confederated Tribes of the Umatilla Indian Reserv. v. Bonneville Power Admin.*, 342 F.3d 924, 930 (9th Cir. 2003).

To be sure, "[i]ssuing a writ of mandamus directing a federal agency to act * * * is 'an extraordinary remedy justified only in exceptional circumstances.'" *Pesticide Action Network N. Am. v. U.S. EPA*, 798 F.3d 809, 813 (9th Cir. 2015). DJI has not requested such relief here. To the

contrary, it has indicated that it "is prepared to wait for the FCC to rule on its petition for reconsideration within a reasonable timeframe." Opp. (Dkt. 21.1) at 16. And this case plainly does not present one of "those rare instances" when an agency can be thought to have engaged in "egregious" delay. *Pesticide Action Network*, 798 F.3d at 813. DJI filed its petition for reconsideration less than one year ago. *See* Pet. for Reconsideration, OET Dkt. No. 26-22 (filed Jan. 21, 2026), https://perma.cc/VV7H-6LHP. The Bureau promptly sought public comment. *See* 91 Fed. Reg. 5245. The comment period closed less than two months ago. *See* June 16 Public Notice, https://perma.cc/FU63-QXQ7. And since that time, the Commission has been engaged in analyzing a record that includes 4 oppositions to reconsideration; additional substantive filings from DJI, the Department of War, and a sitting member of the Senate's Armed Services Committee; and thousands of submissions from members of the public. *See generally* OET Dkt. No. 26-22, *available at* https://www.fcc.gov/ecfs/search/search-filings.

If the FCC fails to act on DJI's petition for reconsideration within a reasonable period, DJI may seek judicial relief at that time—but only through the proper vehicle of a petition for mandamus, not improperly

through this petition for review. DJI would bear the burden, in that context, of making the "truly extraordinary" showing required to "justify [the Court's] interference with nonfinal agency action." *Confederated Tribes*, 342 F.3d at 930 (internal quotation marks omitted).

## CONCLUSION

The petition for review should be dismissed for lack of jurisdiction.

Dated: October 16, 2026

Respectfully submitted,

/s/ *Sarah E. Citrin*

Christopher S. Santini
*Acting General Counsel*

Jacob M. Lewis
*Associate General Counsel*

Sarah E. Citrin
*Deputy Associate General Counsel*

FEDERAL COMMUNICATIONS COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal Communications Commission*

Sharon Swingle
Urja Mittal
*Attorneys*

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, APPELLATE STAFF
950 Pennsylvania Ave. NW
Washington, DC 20530
*Counsel for Respondent United States of America*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains 5,197 words, *or*

   ☐ this document uses a monospaced typeface and contains ____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook, *or*

   ☐ this document has been prepared in a monospaced spaced typeface using ________________ with ___________________.

/s/ *Sarah E. Citrin*
Sarah E. Citrin
*Counsel for Respondents*